1  **JASON I. SER**
   California State Bar No. 201816
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  jason_ser@fd.org

5  Attorneys for Mr. Smith

6

7

8                  UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                 **(HONORABLE JEFFREY T. MILLER)**

11 UNITED STATES OF AMERICA,            )   Case No.:  08cr1969-JM
                                        )
12              Plaintiff,              )   Date:     July 25, 2008
                                        )   Time:     11:00 a.m.
13 v.                                   )
                                        )   **NOTICE OF MOTIONS AND**
14 MANLEY SMITH (2),                    )   **MOTIONS TO:**
                                        )
15              Defendant.              )   **(1) PRESERVE AND INSPECT EVIDENCE;**
                                        )   **(2) COMPEL DISCOVERY;**
16                                      )   **(3) COMPEL NOTICE PURSUANT TO**
                                        )       **FED. R. CRIM. P. 12(b)(4)(B);**
17                                      )   **(4) DISMISS INDICTMENT DUE TO**
                                        )       **MISINSTRUCTION OF GRAND JURY;**
18                                      )       **AND,**
                                        )   **(5) GRANT LEAVE TO FILE FURTHER**
19 _____)       **MOTIONS**

20 TO:     KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
           MARK CONOVER, ASSISTANT UNITED STATES ATTORNEY:
21

22     **PLEASE TAKE NOTICE** that on July 25, 2008, at 11:00 a.m., or as soon thereafter as counsel may

23 be heard, the accused, Manley Smith, by and through his attorneys, Jason I. Ser and Federal Defenders of

24 San Diego, Inc., will ask this Court to enter an order granting the motions outlined below.

25 //

26 //

27

28

                                                                    08cr1969-JM

## MOTIONS

Defendant, Mr. Smith, by and through his attorneys, Jason I. Ser and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

(1)     Preserve and Inspect Evidence;
(2)     Compel Discovery;
(3)     Compel Notice Pursuant to FED. R. CRIM. P. 12(b)(4)(B);
(4)     Dismiss Indictment Due to Misinstruction of Grand Jury; and,
(5)     Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at or before the time of the hearing on these motions.

Respectfully submitted,

_/s/ Jason I. Ser_____

DATED: July 15, 2008          JASON I. SER
                              Federal Defenders of San Diego, Inc.
                              Attorneys for Mr. Smith
                              E-mail:  jason_ser@fd.org

1  **JASON I. SER**
California State Bar No. 201816
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
3  San Diego, California  92101-5008
Telephone:  (619) 234-8467
4  jason_ser@fd.org

5  Attorneys for Mr. Smith

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                   **(HONORABLE JEFFREY T. MILLER)**

11  UNITED STATES OF AMERICA,          )   Case No.:  08cr1969-JM
                                       )
12              Plaintiff,             )   Date:      July 25, 2008
                                       )   Time:      11:00 a.m.
13  v.                                 )
                                       )
14  MANLEY SMITH (2),                  )   **STATEMENT OF FACTS AND POINTS AND**
                                       )   **AUTHORITIES IN SUPPORT OF MOTIONS**
15                                     )
                Defendant.             )
16  _____

17                                **I.**

18                       **STATEMENT OF FACTS**[1]

19          The probable cause statement alleges that on, May 30, 2008, Wackenhut Transportation Officer

20  Vincent Reyes reported his belief that co-defendant Christopher Saint-Lucero (Saint) was involved in alien

21  smuggling.  Officer Reyes claimed Saint stated he had done so approximately 10 times.  Based upon Officer

22  Reyes' report, the San Diego Sector Smuggling Interdiction Group (SIG) commenced an investigation.

23          On June 1, 2008, SIG Agent Manny Ortiz (Ortiz) posed as one Alberto Rodriguez-Osegueda, who

24  was identified as a purported Mexican citizen.  Ortiz was placed into a holding cell at the Chula Vista

25  Border Patrol Station, along with William Edgardo Romero-Estrada (Romero), who was processed as one

26  _____

27          [1] The following statement of facts is based on the probable cause statement attached to the complaint
    in this case.  **The government has not produced any discovery to date**.  Accordingly, the facts alleged
28  in these motions are subject to elaboration and/or modification at the time these motions are heard.
    Mr. Smith reserves the right to take a position contrary to the following statement of facts at the motions
    hearing and at trial.

1   Juan Carlos Barrentos-Estrada, a Mexican citizen processed for voluntary return. Romero, however, was

2   a citizen of El Salvador and alleged undocumented. Ortiz and Romero, along with 5 other unknown

3   Mexican nationals, were listed on Form I-216 (Record of Departure) for deportation/removal to Mexico.

4   At approximately 11:00 a.m., Saint loaded Ortiz and Romero (and possibly the other 5 individuals)

5   into a bus for transport to the San Ysidro port of entry to effect their physical deportation/removal. At the

6   gate into Mexico, Mexican immigration officials interviewed the deportees, including Ortiz and Romero,

7   each of whom declared El Salvadorian citizenship. Transportation Officer Otha Hayes, who was working

8   with Saint, separated Ortiz and Romero from the remaining deportees.

9   At some unknown time while still at the port of entry, Ortiz asked Saint to give "them a break."

10  Saint asked if "they" had any money, handcuffed Ortiz and Romero and placed them back on the bus. On

11  the bus, Saint asked where Ortiz and Romero where they were going. Ortiz and Romero stated they were

12  going to Los Angeles. Again, Saint asked if they had money. Ortiz answered in the negative, while Romero

13  claimed he was to have paid $3,000 for his smuggling. Ortiz them stated he could pay $1,000. Saint told

14  them he was going to make a call, and used a Nextel telephone to contact some unknown individual.

15  Thereafter, Officer Hayes returned to the bus. Saint told him he intended to transport Ortiz and

16  Romero via marked Wackenhut vehicle to the original Border Patrol station in which they were processed.

17  Saint ordered Hayes not to ask and just to do. Officer Hayes drove the bus to the Chula Vista Border Patrol

18  compound and stopped at the station's gasoline pumps.

19  At the time of arrival, a marked Wackenhut jeep pulled in behind the bus. Saint ordered Officer

20  Hayes to stop the bus and exited. He contacted Mr. Smith, who had been driving the jeep. After speaking

21  briefly, he returned to the bus, told Officer Hayes to take a break, and ordered Ortiz and Romero to exit the

22  bus and get into the jeep. While in the jeep, Saint allegedly told Mr. Smith "$5,000 bucks" and Mr. Smith

23  purportedly responded by stating he had his car at the station and could take them or stash them until later.

24  Saint told Mr. Smith to get his car. Saint then indicated he would drop them off and for Mr. Smith to call

25  him later. Mr. Smith drove the jeep to his car and exited.

26  Saint drove the jeep out of the compound to Howard Lane Neighborhood Park, where he dropped

27  them off with orders to wait for him. Saint explained he would call his brother-in-law to pick them up and

28  that Ortiz and Romero would call their families about payment arrangements once in Los Angeles. During

1    this time, various Border Patrol agents conducted surveillance of the area. Approximately one hour later,

2    Saint returned to the park driving a black Toyota Tundra and made eye-contact with Ortiz, but drove away.

3    He returned minutes later in the same vehicle, parked and requested Ortiz and Romero to come to the truck.

4    Ortiz opened the rear door of the truck and, along with Romero, entered it. At this time, Ortiz identified

5    himself as a federal agent and arrested Saint.

6        At approximately 1:45 p.m., Ortiz and other agents arrested Mr. Smith at the Wackenhut office at

7    the Border Patrol station. While escorting Mr. Smith for processing subsequent to his arrest, Mr. Smith

8    allegedly stated "Oh I know what this is about, I know now."

9        At some unknown time after arrest, agents advised Mr. Smith of his rights pursuant to <u>Miranda v.</u>

10   <u>Arizona</u>, 384 U.S. 436 (1966). Mr. Smith purportedly waived his rights and made statements in response

11   to questioning by the agents.

12        On June 13, 2008, Mr. Smith was charged by a grand jury in an indictment with violating 8 U.S.C.

13   §§ 1324(a)(1)(A)(ii), (a)(1)(B)(I), and (v)(II) - Transportation of Illegal Aliens for Financial Gain and

14   Aiding and Abetting. He pled not guilty to this charge.

15                                     **II.**

16                   **<u>MOTION TO PRESERVE AND INSPECT EVIDENCE</u>**

17        Mr. Smith requests the preservation of all physical evidence in this case. This includes any evidence

18   that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or

19   its private contractors) in this case. <u>See</u> <u>United States v. Riley</u>, 189 F.3d 802, 806-808 (9th Cir.1999). This

20   request includes, but is not limited to: (1) the defendant's personal effects; (2) personal effects belonging

21   to any of the material witnesses related to this case, including any papers and telephones; (3) the vehicle(s)

22   allegedly involved; (4) any videotapes capturing Mr. Smith or any third party in relation to this case,

23   including any surveillance footage; (5) any recorded communications made by government or non-

24   government officials related to the above captioned case, e.g., surveillance recordings, Wackenhutt radio

25   communications, or 911/dispatch tapes; and, (6) any other evidence seized from the defendant or any third

26   party in relation to this case. This request also includes any material or percipient witnesses who might be

27   deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients). Mr. Smith

28

1    requests that government counsel be ordered to notify the agencies and private contractors with custody of

2    such evidence be informed of the Court's preservation order.

3    Further, Mr. Smith requests an order granting defense counsel and/or their investigators access to

4    the location where the alleged offense took place (under supervision/escorted if necessary), i.e., Chula Vista

5    Border Patrol compound, the vehicles involved and other case-related evidence for the purposes of

6    investigation, including inspection, and photographing. Fed. R. Crim. P. 16(a)(1)(E). A proposed Order

7    is attached for the convenience of the Court.

8    Mr. Smith requests that the evidence in the case be preserved throughout the pendency of the case,

9    including any appeals.

10    **III.**

11    **MOTION TO COMPEL DISCOVERY**

12    Mr. Smith moves for the production of the following discovery. This request is not limited to those

13    items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody,

14    control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v.

15    Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

16    (1) The Defendant's Statements. The Government must disclose to the defendant all copies of any

17    written or recorded statements made by the defendant; the substance of any statements made by the

18    defendant which the Government intends to offer in evidence at trial; any response by the defendant to

19    interrogation; any written summaries of the defendant's oral statements contained in the handwritten notes

20    of the Government agent(s) as well as any reports containing such; any response to any Miranda warnings

21    which may have been given to the defendant; as well as any other statements by the defendant. Fed. R.

22    Crim. P. 16(a)(1)(A)-(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear

23    that the Government must reveal all the defendant's statements, whether oral or written, regardless of

24    whether the government intends to make any use of those statements.

25    (2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the

26    Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate

27    to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to,

28    any rough notes, records, reports, transcripts or other documents in which statements of the defendant or

any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)-(B) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. <u>See</u> Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(h).

(3) <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case. Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The Government must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(8) <u>Tangible Objects</u>. The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents,

fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

(9) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or his testimony.

(10) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. <u>See</u> Fed R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

(11) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(12) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(13) <u>Witness Addresses</u>. The defendant requests the name and last known address of each prospective Government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a Government witness.

(14) <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him who was unsure of his identity, or participation in the crime charged.

(15) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

08cr1969-JM

(16)  <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963).  In <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(17)  <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

(18)  <u>Agreements Between the Government and Witnesses</u>.  The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(19)  <u>Informants and Cooperating Witnesses</u>.  The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Smith.  The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(20)  <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>,

1  405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or

2  threats were made to the witness to secure cooperation with the authorities.

3      (21) <u>Government Examination of Law Enforcement Personnel Files</u>. Mr. Smith requests that the

4  Government examine the personnel files and any other files within its custody, care or control, or which

5  could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Smith

6  requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other

7  like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory,

8  pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). The obligation to

9  examine files arises by virtue of the defense making a demand for their review: the Ninth Circuit in

10  <u>Henthorn</u> remanded for <u>in camera</u> review of the agents' files because the government failed to examine the

11  files of agents who testified at trial. This Court should therefore order the Government to review all such

12  files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory

13  to Mr. Smith prior to trial. Mr. Smith specifically requests that the prosecutor, not the law enforcement

14  officers, review the files in this case. The duty to review the files, under <u>Henthorn</u>, should be the

15  prosecutor's. Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this

16  request.

17      (22) <u>Expert Summaries</u>. Defendant requests written summaries of all expert testimony that the

18  government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief,

19  written summaries of the bases for each expert's opinion, and written summaries of the experts'

20  qualifications. Fed. R. Crim. P. 16(a)(1)(F). This request includes, but is not limited to, fingerprint expert

21  testimony.

22      (23) <u>Residual Request</u>. Mr. Smith intends by this discovery motion to invoke his rights to discovery

23  to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws

24  of the United States. This request specifically includes all subsections of Rule 16. Mr. Smith requests that

25  the Government provide him and his attorney with the above requested material sufficiently in advance of

26  trial to avoid unnecessary delay prior to cross-examination.

27

28

1

**IV.**

2

**COMPEL NOTICE PURSUANT TO FED. R. CRIM. P. 12(b)(4)(B)**

3      Mr. Smith hereby invokes his procedural rights pursuant FED. R. CRIM. P. 12(b)(4)(B) and moves

4  for an order to compel notice by the government of its intention to use in its case in chief at trial any

5  evidence which Mr. Smith may be entitled to discover under Rule 16 of the FED. R. CRIM. P.

6      This Rule reads in pertinent part:

7      (4) Notice of the Government's Intent to Use Evidence.

8                                                    ***

9           (B) At the Defendant's Request.  At the arraignment or as soon afterward as
           practicable, the defendant may, in order to have an opportunity to move to
10          suppress evidence under Rule 12(b)(3)(C), request notice of the government's
           intent to use (in its evidence-in-chief at trial) any evidence that the defendant
11          may be entitled to discover under Rule 16.

12  FED. R. CRIM. P. 12(b)(4)(B).  Rule 12(b)(4)(B) "provides a mechanism for insuring that a defendant knows

13  of the government's intention to use evidence to which the defendant may want to object" so that the

14  defendant may "avoid the necessity of moving to suppress evidence which the government does not intend

15  to use."[2] FED. R. CRIM. P. 12 advisory committee note to 1974 amendment; see also 1 Charles A. Wright,

16  Federal Practice and Procedure: Criminal § 197, at 735 (2d ed.1982) (Rule 12(d) "is intended to facilitate

17  the making of a pretrial motion for suppression of evidence."); United States v. Jordan, No. 3:06-CR-102,

18  2007 WL 1849985, at *3 (E.D. Tenn. June 5, 2007) ("Rule 12(b)(4)(B) is intended to facilitate the making

19  of pretrial suppression motions by allowing the defendant to avoid filing a motion to suppress when the

20  government does not intend to use the evidence"); United States v. Anderson, 416 F. Supp. 2d 110, 112

21  (D.C. Cir. Feb. 23, 2006) (same) (quoting FED. R. CRIM. P. 12 advisory committee note to 1974

22  amendment).

23

---

24      [2] Government violations of Rule 12(b)(4)(B) should excuse a defendant's failure to move to suppress
    evidence prior to trial, as required by Rule 12(b)(3), because defendants have no incentive to move to
25   suppress evidence that the government will not be introducing.  See United States v. Poole, 794 F.2d 462,
    464 n. 1 (9th Cir.1986) (excusing the defendant's failure to move to suppress evidence prior to trial since
26   the government had not warned the defendant that the evidence would be used); FED. R. CRIM. P. 12(e)
    ("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court
27   sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief
    from the waiver.").

28

Thus, Rule 12(d) aids defendants in complying with their Rule 12(b)(3) obligation to make motions to suppress evidence prior to trial. This in turn preserves the integrity of a trial by not interrupting it with suppression motions. See FED. R. CRIM. P. 12 advisory committee's note (Rule 12(b)(3) "'is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt'") (quoting Jones v. United States, 362 U.S. 257, 264, 80 S. Ct. 725, 732, 4 L. Ed. 2d 697 (1960) (emphasis eliminated)).

United States v. de la Cruz-Paulino, 61 F.3d 986, 993-94 (1st Cir. 1995).

The amendments proposed by the Supreme Court and permitted by Congress to take effect beginning in 1975 show that compliance with such a defense request is mandatory and does not require any court action: "the government, either on its own or in response to a request by the defendant, *must* notify the defendant of its intent to use certain evidence in order to give the defendant an opportunity before trial to move to suppress that evidence." FED. R. CRIM. P. 12 advisory committee note to 1975 amendment, Notes of the Committee on the Judiciary to 1975 Enactment, Amendments Proposed by the Supreme Court, H.R. Rep. No. 94-247 (emphasis added); see also FED. R. CRIM. P. 12 advisory committee note to 2002 amendment (in explaining renumbering and reorganization of subparts of the Rule, stating that "[t]he Committee believed that [old Rule 12(d)], which addresses the government's *requirement* to disclose discoverable information for the purpose of facilitating timely defense objections and motions, was more appropriately associated with the pretrial motions specified in Rule 12(b)(3).") (emphasis added); United States v. Holmes, No. 07-CR-104, 2007 WL 2900438, at *2 (E.D. Wis. 2007) ("Rule 12(b)(4)(B), like FED. R. EVID. 404(b), entitles the defendant to certain information upon request; no court order or intervention is required"); United States v. Anderson, 416 F.Supp. 2d at 112 (discussing 1975 amendment to FED. R. CRIM. P. 12); United States v. Norman, No. 05-CR-30015-DRH-4, 2005 WL 2739082, at *2 (S.D. Ill. Oct. 24, 2005) ("the government is obligated to comply with both Rule 16 and Rule 12(b)(4)(B)."). The government's "duty to disclose [under Rule 12(b)(4)(B)] is a continuing one, and any 'arguably' suppressible evidence coming into its possession after its initial discovery disclosures must be disclosed as soon as practicable." United States v. Kimble, No. CR 106-156, 2007 WL 1430303, *2 (S.D. Ga. May 10, 2007).

"The notice required by the language of the rule is notice of what, if any, of the Rule 16 evidence that a defendant is entitled to receive will be used at trial; evidence that is not subject to Rule 16 disclosure, is not subject to the notice requirement of Rule 12(b)(4)(B)." United States v. Cheatham, 500 F. Supp. 2d 528, 534 (W.D. Pa. 2007) (citing United States v. Fischbach and Moore, Inc., 576 F.Supp. 1384, 1396-1397

1  (W.D. Pa. 1983) (discussing Federal Rule of Criminal Procedure 12(d)(2), now Federal Rule of Criminal

2  Procedure 12(b)(4)(B)).

3      It is clear that what the government is required to disclose early on in the pendency of the
       case is evidence gathered from searches and seizures including electronic monitoring, and
4      statements and confessions, all of which may be subject to suppression upon motion by
       Defendant.  In essence the Rule requires the government to make early disclosure of these
5      matters to allow the Court to determine any suppression motions prior to trial thereby
       avoiding needless delay during trial.

6

7  Kimble,  2007 WL 1430303, at *2.  It should also be noted that when the government has an open file policy

8  with regard to its prosecution, this policy does not comply with Rule 12(b)(4)(B) "because it does not

9  specify which evidence the government intends to use at trial." Cruz-Paulino, 61 F.3d at 993 (citing United

10  States v. Brock, 863 F. Supp. 851, 868 (E.D. Wis. 1994); Anderson, 416 F. Supp. 2d at 112, n. 1 ("Simply

11  complying with an open file policy is insufficient to satisfy Rule 12(b)(4)(B) because merely making

12  discovery available for inspection does not inform a defendant upon what evidence the government intends

13  to rely") (citing Brock, 863 F. Supp. at 868; United States v. Kelley, 120 F.R.D. 103, 107 (E.D. Wis.1988)).

14  In Cruz-Paulino, the First Circuit explained:

15      "To the extent that the government's open files contain information that is subject to Rule
       16 discovery, Rule 12(d)(2) creates a notice requirement.  The open file policy does not, in
16      and of itself, satisfy this notice requirement because it does not specify which evidence the
       government intends to use at trial."  Providing open-file discovery does not satisfy Rule
17      12(d)(2) because "the defendant is still 'left in the dark' as to exactly what evidence,
       discoverable under Rule 16, the government intends to rely upon in its case in chief at trial."
18

19  61 F.3d at 993 (citations omitted).  The district court in Anderson similarly explained:

20      Defendant's entitlement under Rule 12(b)(4)(B), then, is clear: of the material seized from
       [the defendant], the government must notify defendant of the evidence that it intends to use
21      in its case-in-chief-that is, the evidence that will appear on the government's exhibit list for
       trial.
22

23  Anderson, 416 F. Supp. 2d at 112.  Thus, mere disclosure of discovery to the defense pursuant to Rule 16

24  is insufficient notice pursuant to Rule 12(b)(4)(B) of what the government intends to use in its case in chief

25  at trial.[3]

26  _____

27      [3] Also, although Rule 12(b)(4)(B) speaks only of evidence that the government intends to use in its
       case-in-chief, federal courts have the inherent authority to require the government to give notice of such
28      evidence that the government intends to use in rebuttal or otherwise.  See United States v. Richter, 488

1     Accordingly, Mr. Smith requests that any evidence or information that falls within Rule 12(b)(4)(B)

2  be specifically identified from among the items of other discovery that will be produced pursuant to Rule

3  16. It is not the intent or purpose of Rule 12(b)(4)(B) that the government simply reply that its Rule

4  12(b)(4)(B) evidence is contained "somewhere" within the mass of discovery items provided under Rule

5  16. Specific identification of Rule 12(b)(4)(B) evidence is essential to enable counsel to prepare effectively,

6  to conserve judicial time and resources, and if appropriate, to afford an opportunity to move to suppress.

7     Mr. Smith also asks the Court to require the government to file a Rule 12(b)(4)(B) notice some

8  reasonable time prior to the defense's deadline to file appropriate motions under Rule 12(b)(3)(C) and that,

9  if necessary, the defendant be permitted an extension of the motions deadline to file motions to exclude the

10  proffered evidence from admission at trial.[4]

11
**V.**

12
**MOTION TO DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY**

13

14     Mr. Smith moves to dismiss the Indictment due to misinstruction of the July 2007 Grand Jury.

15  Mr. Smith's arguments are essentially those set out in Judge Hawkins' dissent in United States v. Marcucci,

16  299 F.3d 1156 (9th Cir. 2002), cert. denied, 1538 U.S. 934 (2003) and Judge Kozinski's dissent in United

17  States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004), opinion vacated by and en banc review granted by

18  United States v. Navarro-Vargas, 367 F.3d 920 (9th Cir. 2004), and he incorporates those arguments by

19  reference. See Reporter's Partial Transcript of the Proceedings (Instructions), dated July 26, 2007 (Exhibit

20  A hereto).

21

22

23

24  F.2d 170, 173-74 (9th Cir. 1973). Such notice is required to "protect[] the trial from error and enable[] the defense at the most appropriate time to obtain a ruling on the usability by the prosecution of

25  important evidence." Battle v. United States, 345 F.2d 438, 440 (D.C. Cir. 1965).

26  [4] The Court has significant latitude in fashioning the mechanism by which such disclosure must occur. According to the advisory committee notes to the 1974 amendment to Rule 12, "[n]o sanction is

27  provided for the government's failure to comply with the court's order because the committee believes that attorneys for the government will in fact comply and that *judges have ways of insuring compliance*."

28  FED. R. CRIM. P. 12, advisory committee notes to 1974 amendment (emphasis added).

1    However, if the Court would like further briefing on this issue, Mr. Smith would readily  provide

2    it.

3                                              **VI.**

4                **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

5        Defense counsel requests leave to file further motions and notices of defense based upon information

6    gained in the discovery process as well as defense investigation.  In particular, Mr. Smith intends to file,

7    at the least, motions to suppress statements.

8                                             **VII.**

9                                       **CONCLUSION**

10       For these and all the foregoing reasons, the defendant, Mr. Smith, respectfully requests that this

11   Court grant his motions and grant any and all other relief deemed proper and fair.

12                                        Respectfully submitted,

13

14                                         _s/ Jason I. Ser_____
     DATED: July 15, 2008              JASON I. SER

15                                     Federal Defenders of San Diego, Inc.
                                       Attorneys for Mr. Smith
16                                     E-mail:  jason_ser@fd.org

17

18

19

20

21

22

23

24

25

26

27

28

**INDEX OF EXHIBITS**

<u>United States v. Manley Smith</u>

Case No. 08cr1969-JM

<u>Page</u>

Reporter's Partial Transcript of the Proceedings, July 26, 2007 (Exhibit A)  . . . . . . . . . . . . . . . . 1

# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE:  THE IMPANELMENT            )
                                   )
OF GRAND JURY PANELS 07-3 AND      )
                                   )
07-4                               )
                                   )
                                   )
                                   )
_____    )

BEFORE THE HONORABLE LARRY ALAN BURNS

UNITED STATES DISTRICT JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THURSDAY, JULY 26, 2007

COURT REPORTER:

EVA OEMICK
OFFICIAL COURT REPORTER
UNITED STATES COURTHOUSE
940 FRONT STREET, STE. 2190
SAN DIEGO, CA 92101
TEL: (619) 615-3103

1

1    <u>SAN DIEGO, CALIFORNIA - THURSDAY, JULY 27, 2007 - 9:00 A.M.</u>

2         MR. HAMRICK:   I WOULD ASK BOTH PANELS TO RISE AND

3    EVERYONE ELSE WILL BE CONSIDERED AN ALTERNATE.   EVERYONE WILL

4    TAKE THE OATH OF GRAND JURY SERVICE.

5         IF YOU WOULD PLEASE RAISE YOUR RIGHT HAND AND

6    RESPOND "I DO" AT THE END.

7         DO YOU, AND EACH OF YOU, SOLEMNLY SWEAR OR AFFIRM

8    THAT YOU SHALL DILIGENTLY INQUIRE INTO AND MAKE TRUE

9    PRESENTMENT OR INDICTMENT OF ALL MATTERS AND THINGS AS SHALL

10   BE GIVEN TO YOU IN CHARGE OR OTHERWISE COME TO YOUR KNOWLEDGE,

11   TOUCHING YOUR GRAND JURY SERVICE; TO KEEP SECRET THE COUNSEL

12   OF THE UNITED STATES, YOUR FELLOWS AND YOURSELVES; NOT TO

13   PRESENT OR INDICT ANY PERSON THROUGH HATRED, MALICE OR ILL

14   WILL; NOR LEAVE ANY PERSON UNREPRESENTED OR UNINDICTED THROUGH

15   FEAR, FAVOR, OR AFFECTION, NOR FOR ANY REWARD, OR HOPE OR

16   PROMISE THEREOF; BUT IN ALL YOUR PRESENTMENTS AND INDICTMENTS

17   TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE

18   TRUTH, TO THE BEST OF YOUR SKILL AND UNDERSTANDING?

19         IF SO, ANSWER, "I DO."

20         THE COURT:   NOW THAT I'VE IMPANELED AND SWORN YOU AS

21   GRAND JURORS, IT'S THE COURT'S RESPONSIBILITY TO INSTRUCT YOU

22   ON THE LAW WHICH SHOULD GOVERN YOUR ACTIONS AND YOUR

23   DELIBERATIONS AS GRAND JURORS.

24         THE FRAMERS OF OUR FEDERAL CONSTITUTION THOUGHT THAT

25   THE GRAND JURY WAS SO IMPORTANT TO THE ADMINISTRATION OF

1   JUSTICE THAT THEY INCLUDED A PROVISION FOR THE GRAND JURY IN

2   THE BILL OF RIGHTS.   THE 5TH AMENDMENT TO THE U.S.

3   CONSTITUTION PROVIDES, IN PART, THAT NO PERSON SHALL BE HELD

4   TO ANSWER FOR A CAPITAL OR OTHERWISE INFAMOUS CRIME WITHOUT

5   ACTION BY A GRAND JURY.   AN INFAMOUS CRIME MEANS A SERIOUS

6   CRIME WHICH MAY BE PUNISHABLE BY IMPRISONMENT OF MORE THAN A

7   YEAR.

8           THE PURPOSE OF THE GRAND JURY IS TO DETERMINE

9   WHETHER THERE IS ENOUGH EVIDENCE TO JUSTIFY A FORMAL

10  ACCUSATION AGAINST A PERSON; THAT IS, AS YOU'VE HEARD ME SAY,

11  TO DETERMINE WHETHER THERE'S PROBABLE CAUSE TO BELIEVE THAT

12  THE PERSON COMMITTED A CRIME.

13          IF LAW ENFORCEMENT OFFICIALS WERE NOT REQUIRED TO

14  SUBMIT TO AN IMPARTIAL GRAND JURY PROOF OF GUILT AS TO A

15  PROPOSED CHARGE AGAINST A PERSON SUSPECTED OF HAVING COMMITTED

16  A CRIMINAL, THEN THEY WOULD BE FREE TO ARREST SUSPECTS AND

17  BRING THE SUSPECTS TO TRIAL NO MATTER HOW LITTLE EVIDENCE

18  EXISTED TO SUPPORT THE CHARGE.

19          THE GRAND JURY IS AN INDEPENDENT BODY.  IT DOESN'T

20  BELONG TO ANY BRANCH OF GOVERNMENT.  AS MEMBERS OF THE GRAND

21  JURY, NOW YOU, IN A VERY REAL SENSE, STAND BETWEEN THE

22  GOVERNMENT AND THE PERSON BEING INVESTIGATE BY THE GOVERNMENT.

23          A GRAND JURY MUST NEVER BE MADE AN INSTRUMENT OF

24  PRIVATE PREJUDICE OR VENGEANCE OR MALICE.  INSTEAD, IT'S YOUR

25  DUTY TO SEE TO IT THAT INDICTMENTS ARE RETURNED ONLY AGAINST

4

1   THOSE WHO YOU FIND PROBABLE CAUSE TO BELIEVE ARE GUILTY OF A

2   CRIME AND TO SEE TO THAT THE INNOCENT ARE NOT COMPELLED TO GO

3   TO TRIAL.   YOU'LL REMEMBER MY COMMENTS AND EXPLANATION ON

4   THAT.   THE POWER TO INDICT IS THE POWER TO RUIN SOMEBODY.

5               A MEMBER OF A GRAND JURY WHO IS RELATED BY BLOOD OR

6   MARRIAGE TO A PERSON UNDER INVESTIGATION OR WHO KNOWS THAT

7   PERSON WELL ENOUGH TO HAVE A BIASED STATE OF MIND OR IS BIASED

8   FOR ANY OTHER REASON SHOULD NOT PARTICIPATE IN THE

9   INVESTIGATION OF THAT PERSON OR IN THE RETURN OF AN

10  INDICTMENT.

11              WHAT THIS MEANS MORE GENERALLY IS IF YOU'RE

12  PERSONALLY ACQUAINTED AND HAD A PERSONAL VIEWPOINT ON SOME

13  MATTER PRESENTED TO THE GRAND JURY, YOU SHOULD IDENTIFY THAT

14  TO THE ASSISTANT UNITED STATES ATTORNEY WHO'S PRESENTING THE

15  CASE AND SHOULD CONSIDER WHETHER YOUR FRAME OF MIND IS SUCH

16  THAT YOU SHOULD NOT PARTICIPATE IN THE DELIBERATION OF THAT

17  PARTICULAR MATTER.

18              THIS DOESN'T MEAN THAT IF YOU HAVE AN OPINION, YOU

19  SHOULDN'T PARTICIPATE IN THE INVESTIGATION.   WHAT IT DOES MEAN

20  IS THAT IF YOU HAVE A FIXED OPINION BEFORE YOU HEAR ANY

21  EVIDENCE, EITHER A BIAS AGAINST OR A FRIENDSHIP THAT WOULD

22  CAUSE YOU TO FAVOR SOMEONE OR ILL WILL OR SOME OTHER

23  MOTIVATION, THEN YOU SHOULDN'T PARTICIPATE IN THAT

24  INVESTIGATION OR IN VOTING ON THAT PARTICULAR INDICTMENT.

25              GRAND JURIES CONSIST OF 23 MEMBERS, AND 16 OF THE 23

4

5

1    MUST BE PRESENT IN ORDER FOR THERE TO BE A QUORUM; THAT IS, IN

2    ORDER FOR THE GRAND JURY TO FUNCTION AND DO ITS WORK.  IT'S

3    REQUIRED THAT A MINIMUM OF 16 GRAND JURORS BE PRESENT.  IF

4    FEWER THAN THAT NUMBER ARE PRESENT EVEN FOR A MOMENT, THEN THE

5    PROCEEDINGS OF THE GRAND JURY HAVE TO STOP UNTIL AT LEAST 16

6    ARE PRESENT.

7         AS GRAND JURORS YOU HAVE EXTENSIVE POWERS, BUT

8    THEY'RE LIMITED IN SOME IMPORTANT RESPECTS.  I'LL GO OVER

9    THOSE WITH YOU NOW.

10        FIRST, YOU CAN ONLY INVESTIGATE CONDUCT THAT

11   VIOLATES THE FEDERAL CRIMINAL LAWS.  YOU'RE IN, AFTER ALL,

12   FEDERAL COURT, AND YOU'RE IMPANELED AS A FEDERAL GRAND JURY.

13   CRIMINAL ACTIVITY THAT VIOLATES STATE LAWS IS OUTSIDE OF YOUR

14   INQUIRY, AND IT'S OUTSIDE OF YOUR DISCRETION.  HAVING SAID

15   THAT, SOMETIMES THE SAME CONDUCT VIOLATES BOTH FEDERAL AND

16   STATE LAW.  AND IF THAT'S THE CASE, THEN YOU MAY PROPERLY

17   CONSIDER THAT CONDUCT.

18        THERE'S ALSO A GEOGRAPHIC LIMITATION ON THE SCOPE OF

19   YOUR INQUIRIES IN EXERCISING YOUR POWER.  YOU MAY INQUIRE ONLY

20   TO FEDERAL OFFENSES COMMITTED IN THIS DISTRICT.  WHAT THAT

21   MEANS IS THE CASES PRESENTED TO YOU WILL ARISE HERE HAVING --

22   THE INCIDENTS HAVING ARISEN HERE IN THE COUNTY OF SAN DIEGO OR

23   THE COUNTY OF IMPERIAL.  YOU'RE NOT AUTHORIZED TO INVESTIGATE

24   MATTERS THAT OCCUR OUTSIDE THIS DISTRICT.

25        NOW, LET ME ADD ANOTHER WRINKLE TO THAT.

6

1          OCCASIONALLY, ACTIONS OR ACTIVITIES THAT TAKE PLACE

2   HERE ALSO AFFECT OTHER DISTRICTS OR OTHER PARTS OF THE

3   COUNTRY.  MANY OF THE FEDERAL LAWS YOU LOOK AT HAVE AN

4   INTERSTATE CONNECTION, SOMEBODY SENDING MAIL OR USING A WIRE.

5   SO IT MAY WELL BE THAT YOU HAVE EVIDENCE OF CRIMINAL ACTIVITY

6   OCCURRING IN OTHER DISTRICTS, BUT WHAT'S IMPORTANT IS THAT

7   THERE ALWAYS BE A TIE INTO THIS DISTRICT; THAT SOMETHING

8   HAPPENED THAT THE GOVERNMENT ALLEGES IS CRIMINAL EITHER IN

9   SAN DIEGO COUNTY OR IMPERIAL COUNTY, IN THE SOUTHERN DISTRICT

10  OF CALIFORNIA.

11          YOU HEARD ME SAY THIS BEFORE.  IT BEARS REPEATING.

12  YOU'RE NOT TO JUDGE THE WISDOM OF THE CRIMINAL LAWS ENACTED BY

13  CONGRESS; THAT IS, WHETHER OR NOT THERE SHOULD OR SHOULD NOT

14  BE A FEDERAL LAW DESIGNATING ACTIVITY AS CRIMINAL IS A MATTER

15  TO BE DETERMINED BY CONGRESS AND NOT BY YOU.

16          FURTHERMORE, WHEN DECIDING WHETHER OR NOT TO INDICT,

17  YOU SHOULD NOT CONSIDER SUCH THINGS AS PUNISHMENT IN THE EVENT

18  OF CONVICTION.  PUNISHMENT IS A MATTER FOR THE COURT, AND IT

19  SHOULD NOT AFFECT YOUR DETERMINATION ON WHETHER THE EVIDENCE

20  IS SUBSTANTIAL ENOUGH TO JUSTIFY BRINGING FORWARD THE CHARGES.

21          THE CASES THAT YOU'LL HEAR WILL COME TO YOU IN

22  DIFFERENT WAYS.  FREQUENTLY, PEOPLE ARE ARRESTED DURING OR

23  SHORTLY AFTER THE COMMISSION OF A CRIME.  WHEN THAT HAPPENS,

24  TYPICALLY THEY'RE TAKEN IN FRONT OF ONE OF THE MAGISTRATE

25  JUDGES WHO HOLDS A PRELIMINARY HEARING AND MAKES A PRELIMINARY

7

1  ASSESSMENT OF THE PROBABLE CAUSE TO BELIEVE WHETHER A FEDERAL

2  CRIME WAS COMMITTED AND THIS PERSON WAS ASSOCIATED WITH THE

3  COMMISSION OF THE CRIME.

4        IF THE MAGISTRATE JUDGE DOES FIND PROBABLE CAUSE,

5  THEN HE'LL DIRECT THAT THE PERSON BE HELD FOR ACTION BY THE

6  GRAND JURY.  SO THEN YOU CAN INDEPENDENTLY CONSIDER WHETHER

7  THERE SHOULD BE AN INDICTMENT.  NO INDICTMENT, REMEMBER, CAN

8  GO FORWARD WITHOUT YOUR IMPRIMATUR, WITHOUT YOUR INDEPENDENT

9  JUDGMENT OKAYING THAT INDICTMENT.

10        OTHER CASES CAN BE BROUGHT TO YOU BY THE GOVERNMENT

11  ATTORNEY, THE U.S. ATTORNEY, OR HER ASSISTANTS BEFORE AN

12  ARREST, BUT AFTER AN INVESTIGATION HAS BEEN CONDUCTED BY A

13  GOVERNMENT AGENCY SUCH AS THE FBI OR THE TREASURY DEPARTMENT

14  OR DEA, POSTAL AUTHORITIES, OR OTHER FEDERAL ENFORCEMENT

15  OFFICIALS.

16        FREQUENTLY, YOU'LL BE A COMPONENT OF THAT

17  INVESTIGATION.  THERE WON'T BE ANY ARRESTS MADE YET, BUT THE

18  GOVERNMENT MAY BRING TO YOU SOMETHING THAT LOOKS SUSPICIOUS

19  AND THAT THEY BELIEVE MAY BE CRIMINAL.  AND YOU'LL BE CALLED

20  UPON TO PARTICIPATE IN THE INVESTIGATION OF THAT MATTER TO

21  DETERMINE WHETHER CHARGES SHOULD BE BROUGHT.

22        SINCE THE GOVERNMENT ATTORNEY HAS THE DUTY OF

23  PROSECUTING PEOPLE CHARGED WITH THE COMMISSION OF FEDERAL

24  CRIMES, THAT ATTORNEY WILL PRESENT MATTERS THAT THE GOVERNMENT

25  WANTS YOU TO CONSIDER.  THE GOVERNMENT WILL POINT OUT TO YOU

7

8

1  THE LAWS WHICH IT BELIEVES HAVE BEEN VIOLATED AND TYPICALLY

2  WILL SUBPOENA FOR TESTIMONY BEFORE YOU SUCH WITNESSES AS THE

3  LAWYER THINKS ARE IMPORTANT AND NECESSARY AND ALSO ANY OTHER

4  WITNESSES THAT YOU REQUEST OR DIRECT BE CALLED BEFORE YOU.

5          REMEMBER, YOU'RE ACTING INDEPENDENT OF THE

6  GOVERNMENT'S ATTORNEY.  IF YOU WANT ADDITIONAL EVIDENCE, IF

7  YOU THINK ADDITIONAL WITNESSES OUGHT TO BE CALLED, THEN THAT

8  IS YOUR EXCLUSIVE PREROGATIVE.  YOU'RE TO DIRECT OR ASK THE

9  U.S. ATTORNEY TO CALL THOSE PEOPLE IF YOU WANT TO HEAR FROM

10  THEM AS WELL.

11          IF, DURING THE COURSE OF YOUR HEARINGS, IT TURNS OUT

12  THAT A DIFFERENT CRIME OTHER THAN THE ONE THAT YOU'RE

13  INVESTIGATING SURFACES, YOU HAVE THE RIGHT TO PURSUE THE NEW

14  CRIME.  ALTHOUGH YOU CAN SUBPOENA NEW WITNESSES AND DOCUMENTS,

15  YOU DON'T HAVE THE POWER AS A GRAND JURY TO EMPLOY

16  INVESTIGATORS OR TO EXPEND FEDERAL FUNDS FOR INVESTIGATIVE

17  PURPOSES.  RATHER, AS I SAID, YOU MUST TURN TO THE U.S.

18  ATTORNEY AND ASK THEM TO BRING THE PEOPLE IN.

19          IF THE GOVERNMENT ATTORNEY REFUSES TO ASSIST YOU OR

20  YOU BELIEVE THE GOVERNMENT LAWYER IS NOT ACTING IMPARTIALLY,

21  YOU CAN TAKE IT UP WITH ME OR ANY OTHER JUDGE OF THIS COURT.

22  I'M WILLING AND AVAILABLE TO MEET WITH YOU.

23          USE THIS POWER -- YOU MAY USE THIS POWER EVEN OVER

24  THE ACTIVE OPPOSITION OF THE GOVERNMENT LAWYER IF YOU BELIEVE

25  IT'S NECESSARY AND IN THE INTEREST OF JUSTICE.  AGAIN, THIS

8

9

1    UNDERSCORES YOUR INDEPENDENCE AS A GROUP OF CITIZENS.

2           THE EVIDENCE THAT YOU'LL CONSIDER AS GRAND JURORS

3    WILL NORMALLY CONSIST OF ORAL TESTIMONY FROM WITNESSES AND

4    WRITTEN DOCUMENTS OR TANGIBLE THINGS.  SOMETIMES IT WILL BE

5    DIAGRAMS, PHOTOGRAPHS, AND THE LIKE.  THE WITNESSES WHO APPEAR

6    BEFORE THE GRAND JURY DO SO SEPARATELY.  IN OTHER WORDS,

7    THERE'S NEVER A TIME WHEN THERE'S TWO WITNESSES AT THE SAME

8    TIME IN FRONT OF YOU.

9           WHEN A WITNESS FIRST APPEARS BEFORE YOU, IT'S THE

10   RESPONSIBILITY OF THE FOREPERSON OF THE GRAND JURY TO

11   ADMINISTER AN OATH OR AN AFFIRMATION TO THE WITNESS, AND THE

12   AFFIRMATION ON THE PART OF THE WITNESS WILL ATTEST THAT THE

13   WITNESS UNDERSTANDS THE DUTY TO TESTIFY TRUTHFULLY.  AFTER

14   THIS HAS BEEN ACCOMPLISHED, THE WITNESS CAN BE QUESTIONED.

15          ORDINARILY, THE GOVERNMENT LAWYER WILL QUESTION THE

16   WITNESS FIRST.  THEN IT MAY BE UP TO THE FOREPERSON OR THE

17   ASSISTANT FOREPERSON OR ANY OTHER MEMBER OF THE GRAND JURY TO

18   ASK QUESTIONS.  IN THE EVENT THE WITNESS DOESN'T SPEAK OR

19   UNDERSTAND ENGLISH, AN INTERPRETER MAY BE BROUGHT INTO THE

20   GRAND JURY ROOM TO ASSIST IN THE QUESTIONING.  THIS IS AN

21   IMPORTANT POINT.  YOU'RE ENCOURAGED TO EXERCISE YOUR

22   INDEPENDENCE.  YOU CAN ASK FOLLOW-UP QUESTIONS THAT YOU DEEM

23   ARE RELEVANT.

24          SOME OF THE ASSISTANT U.S. ATTORNEYS MAY FOLLOW A

25   PROTOCOL OF ASKING YOU TO PUT THE QUESTIONS IN WRITING AND

1  HAVE THEM ASK THEM FOR YOU.  LET ME TELL YOU IN MY EXPERIENCE

2  WHY THAT IS SOMETIMES.  LET ME GO BACK.

3       WHEN I WAS DOING THIS 20 YEARS AGO, A QUESTION WOULD

4  ARISE OCCASIONALLY "HAS THIS PERSON EVER BEEN IN TROUBLE

5  BEFORE?  DO THEY HAVE ANY KIND OF CRIMINAL RECORD?"

6       NOW, THAT'S A PROPER QUESTION.  IT CAN BE ASKED.

7  BUT ORDINARILY, I WOULD CAUTION THE GRAND JURORS NOT TO ASK

8  THAT QUESTION UNLESS IT RELATED TO AN ELEMENT OF ONE OF THE

9  PROPOSED CHARGES UNTIL AFTER THEY HAVE MADE A DECISION WHETHER

10  TO INDICT.  I DIDN'T WANT THEM TO BE INFLUENCED, FOR EXAMPLE,

11  BY THE FACT THAT SOMEBODY HAD DONE IT BEFORE, AND SO THEY'RE

12  DOING IT AGAIN.

13       SO YOU MAY FIND THAT SOME OF THE GOVERNMENT LAWYERS

14  WILL SAY, "I'LL GET AN ANSWER TO THAT FOR YOU, BUT I'D LIKE TO

15  DEFER THE QUESTION UNTIL LATER."  THAT'S UP TO YOU.  YOU CAN

16  ACCEDE TO THAT REQUEST IF YOU FIND THAT IT'S APPROPRIATE OR

17  YOU CAN INSIST ON THE QUESTION BEING ANSWERED AT THE SAME

18  TIME.

19       AS I SAID, WHEN I ASKED THAT THAT QUESTION BE

20  DEFERRED, IT WAS BECAUSE I DIDN'T WANT ANYBODY TO BE

21  INFLUENCED BY A PRIOR RECORD IN DETERMINING WHETHER THE

22  EVIDENCE BEFORE THEM ON THE NEW ALLEGATIONS WERE SUFFICIENT TO

23  JUSTIFY GOING FORWARD.  SO THAT'S JUST ONE EXAMPLE OR ONE

24  CONTEXT IN WHICH YOU MAY RUN INTO THE PROSECUTOR SAYING "LET'S

25  NOT ASK THAT NOW" OR "LET'S ASK IT LATER."  AGAIN, THOUGH, YOU

1  HAVE THE INDEPENDENT RIGHT TO POSE QUESTIONS AND HAVE THOSE

2  QUESTIONS ANSWERED BEFORE YOU TAKE ACTION.

3        WITNESSES WHO DO APPEAR IN FRONT OF YOU SHOULD BE

4  TREATED COURTEOUSLY, AND QUESTIONS PUT TO THEM SHOULD BE DONE

5  IN AN ORDERLY FASHION.  IF YOU HAVE ANY DOUBT WHETHER IT'S

6  PROPER TO ASK A PARTICULAR QUESTION, THEN ASK THE GOVERNMENT

7  LAWYER FOR ADVICE.  IF NECESSARY, YOU CAN OBTAIN A RULING FROM

8  THE COURT IN CASES WHERE THERE IS NOT AGREEMENT.

9        YOU AS GRAND JURORS DECIDE HOW MANY WITNESSES YOU

10 WANT TO HEAR.  YOU CAN SUBPOENA A WITNESS FROM ANYWHERE IN THE

11 COUNTRY DIRECTING THAT THE GOVERNMENT ATTORNEYS ISSUE A

12 NECESSARY SUBPOENA.  HOWEVER, BEAR IN MIND THAT PEOPLE SHOULD

13 NOT ORDINARILY BE SUBJECTED TO DISRUPTION OF THEIR DAILY LIVES

14 OR HARASSED OR ANNOYED OR INCONVENIENCED, NOR SHOULD PUBLIC

15 FUNDS BE EXPENDED TO BRING WITNESSES IN UNLESS YOU BELIEVE

16 THAT THE WITNESS CAN PROVIDE MEANINGFUL EVIDENCE WHICH WILL

17 ASSIST YOU IN YOUR INVESTIGATION.

18        EVERY WITNESS WHO APPEARS BEFORE THE GRAND JURY HAS

19 CERTAIN RIGHTS.  WITNESSES HAVE THE RIGHT, FOR EXAMPLE, TO

20 REFUSE TO ANSWER QUESTIONS IF THE ANSWER WOULD TEND TO

21 INCRIMINATE THEM AND THE RIGHT TO KNOW THAT ANYTHING THEY SAY

22 MAY BE USED AGAINST THEM LATER.  IF THAT HAPPENS IN A MATTER

23 UNDER INVESTIGATION BEFORE YOU, YOU SHOULD HOLD NO PREJUDICE

24 AGAINST A WITNESS WHO EXERCISES THE RIGHT AGAINST COMPULSORY

25 SELF-INCRIMINATION, AND THIS CAN PLAY NO PART IN THE RETURN OF

12

1    ANY INDICTMENT.

2        WHAT THAT MEANS IS ALL OF US HAVE THE RIGHT, IF WE

3    THINK THAT THE ANSWER MAY INCRIMINATE US, NOT TO ANSWER.

4    THAT'S ONE OF OUR CONSTITUTIONAL GUARANTEES.  IF THAT HAPPENS

5    IN A CASE UNDER INVESTIGATION BEFORE YOU, YOU NEED TO EXERCISE

6    THE MENTAL DISCIPLINE TO PUT THAT OUT OF YOUR MIND WHEN

7    DETERMINING WHETHER THE EVIDENCE OTHER THAN THAT INVOCATION OF

8    RIGHTS WHICH IS NOT EVIDENCE -- BUT WHETHER THE EVIDENCE OF

9    ITSELF IS SUFFICIENT TO JUSTIFY THE CHARGE.  YOU CAN'T BE

10   PREJUDICED AGAINST SOMEBODY WHO MAY HAVE INVOKED THEIR RIGHT

11   TO REMAIN SILENT.

12        WITNESSES WHO APPEAR BEFORE THE GRAND JURY ARE NOT

13   PERMITTED TO HAVE A LAWYER PRESENT WITH THEM IN THE GRAND JURY

14   ROOM, ALTHOUGH THE LAW DOES ALLOW A WITNESS TO CONFER WITH A

15   LAWYER OUTSIDE THE GRAND JURY ROOM.  THAT MAY HAPPEN, IF

16   EXPERIENCE IS A GUIDE, IN CERTAIN CASES.  A WITNESS MAY SHOW

17   UP WITH A LAWYER AND MAY FROM TIME TO TIME ASK FOR BREAKS IN

18   THE GRAND JURY SESSION TO CONSULT WITH THE LAWYER.

19        SINCE APPEARANCE BEFORE A GRAND JURY MAY PRESENT

20   COMPLEX LEGAL PROBLEMS THAT REQUIRE THE ASSISTANCE OF A

21   LAWYER, YOU SHOULD NOT HOLD IT AGAINST A WITNESS IF A WITNESS

22   CHOOSES TO EXERCISE THE RIGHT TO CONSULT WITH A LAWYER AND

23   FROM TIME TO TIME LEAVES THE GRAND JURY ROOM FOR THAT PURPOSE.

24        ORDINARILY, NEITHER THE PERSON BEING INVESTIGATED BY

25   THE GOVERNMENT NOR ANY WITNESS ON BEHALF OF THAT PERSON WILL

12

13

1   TESTIFY IN FRONT OF THE GRAND JURY.  IT'S MOSTLY A ONE-SIDED

2   AFFAIR WITH THE GOVERNMENT PRESENTING WITNESSES IN SUPPORT OF

3   THE PROPOSED CHARGE.  UPON THE REQUEST OF A PERSON WHO IS

4   UNDER INVESTIGATION, HOWEVER, PREFERABLY IN WRITING, YOU MAY

5   AFFORD THAT PERSON AN OPPORTUNITY TO APPEAR IN FRONT OF YOU.

6   THE GOVERNMENT PROSECUTORS WILL ALERT YOU IF THEY'VE RECEIVED

7   ANY SUCH REQUEST.  IF A PERSON'S THE TARGET OF AN

8   INVESTIGATION AND WANTS TO TESTIFY, THEN THEY WILL TELL YOU

9   THAT.  IT'S UP TO YOU TO AFFORD THAT PERSON AN OPPORTUNITY TO

10  TESTIFY IF YOU CHOOSE.

11          BECAUSE THE APPEARANCE OF A PERSON BEING

12  INVESTIGATED BEFORE YOU MAY RAISE COMPLICATED LEGAL PROBLEMS,

13  YOU SHOULD CONSULT WITH THE GOVERNMENT ATTORNEY AND SEEK THE

14  GOVERNMENT ATTORNEY'S ADVICE AND, IF NECESSARY, THE COURT'S

15  ADVICE BEFORE DETERMINING WHETHER IT'S APPROPRIATE FOR THE

16  PERSON TO APPEAR IN FRONT OF YOU.

17          IF THAT DOES OCCUR, WHERE SOMEONE WHO'S ACTUALLY

18  UNDER INVESTIGATION OR THE OBJECT OR TARGET OF THE

19  INVESTIGATION WANTS TO TESTIFY, BEFORE THAT HAPPENS, THAT

20  PERSON MUST BE ADVISED OF HIS OR HER RIGHTS AND REQUIRED TO

21  SIGN A FORMAL WAIVER.  AND YOU SHOULD BE COMPLETELY SATISFIED

22  THAT THE PERSON BEING INVESTIGATED UNDERSTANDS WHAT HE OR SHE

23  IS DOING.  YOU'RE NOT REQUIRED TO SUMMON WITNESSES THAT THE

24  PERSON MAY WISH YOU TO EXAMINE UNLESS PROBABLE CAUSE FOR

25  INDICTMENT MAY BE EXPLAINED AWAY BY THEIR TESTIMONY.  AGAIN,

14

1    THIS IS A MATTER FOR YOU ACTING INDEPENDENTLY.

2          THE DETERMINATION OF WHETHER A WITNESS IS TELLING

3    THE TRUTH IS SOMETHING THAT YOU MUST DECIDE.  NEITHER THE

4    COURT NOR THE PROSECUTORS NOR ANY OFFICERS OF THE COURT CAN

5    MAKE THAT DETERMINATION FOR YOU.  AS YOU LISTEN TO THE WITNESS

6    PRESENTED TO THE GRAND JURY AND HEAR THEIR TESTIMONY, REMEMBER

7    THAT YOU ARE THE EXCLUSIVE JUDGES OF EACH WITNESS'S

8    CREDIBILITY.  YOU CAN BELIEVE THE WITNESS'S TESTIMONY OR PART

9    OF IT OR NONE OF IT AT ALL.

10          DETERMINING THE CREDIBILITY OF A WITNESS INVOLVES A

11    QUESTION OF FACT, NOT A QUESTION OF LAW.  IT'S A MATTER TO

12    WHICH YOU BRING YOUR GOOD JUDGMENT AND YOUR EXPERIENCE.  ALL

13    OF US HAVE WHAT I SOMETIMES CALL POLYGRAPH INSTINCTS THAT WE

14    DEVELOP OVER THE YEARS.  WE HAVE AN INSTINCT FOR KNOWING

15    WHETHER SOMETHING HAS THE RING OF TRUTH OR NOT.  OBVIOUSLY,

16    YOU USE THOSE IN EVALUATING WITNESS TESTIMONY BEFORE THE GRAND

17    JURY.

18          ALSO, WHEN YOU HEAR WITNESSES BEFORE THE GRAND JURY,

19    YOU MAY CONSIDER WHETHER THE WITNESSES ARE PERSONALLY

20    INTERESTED IN THE OUTCOME OF THE INVESTIGATION, WHETHER THEIR

21    TESTIMONY HAS BEEN CORROBORATED OR SUPPORTED BY OTHER

22    WITNESSES OR CIRCUMSTANCES, WHAT OPPORTUNITY THEY HAD FOR

23    OBSERVING OR ACQUIRING KNOWLEDGE CONCERNING THE THINGS THAT

24    THEY'RE TESTIFYING ABOUT.  YOU MAY ALSO CONSIDER THE

25    REASONABLENESS OF THEIR TESTIMONY, THE PROBABILITY OF THE

15

1    TESTIMONY, AND CERTAINLY THEIR MANNER AND DEMEANOR WHILE

2    TESTIFYING.  THESE SEVERAL FACTORS ARE THE SAME THINGS WE TELL

3    TRIAL JURIES.  SO THOSE OF YOU WHO SAT ON TRIAL JURIES BEFORE

4    MAY HAVE IN MIND YOU GOT A SIMILAR INSTRUCTION.

5            AS I MENTIONED TO YOU, THE RULES OF EVIDENCE DON'T

6    APPLY WITH FULL FORCE BEFORE THE GRAND JURY.  HEARSAY

7    TESTIMONY IS ADMISSIBLE BEFORE A GRAND JURY.  HEARSAY IS

8    TESTIMONY THAT RELATES TO FACTS NOT KNOWN BY THE WITNESS OF

9    THE WITNESS'S OWN PERSONAL KNOWLEDGE.  INSTEAD, IT HAS BEEN

10   TOLD OR RELATED TO THE WITNESS BY PERSONS OTHER THAN THE

11   PERSON BEING INVESTIGATED.

12            HEARSAY TESTIMONY, IF YOU DEEM IT TO BE RELIABLE AND

13   PERSUASIVE, MAY ITSELF PROVIDE A BASIS FOR RETURNING AN

14   INDICTMENT.  YOU'RE FREE TO RELY ON HEARSAY TESTIMONY IF YOU

15   FIND IT TO BE PERSUASIVE AND RELIABLE.  YOU MUST BE SATISFIED

16   THAT THERE IS EVIDENCE AGAINST THE ACCUSED SHOWING PROBABLE

17   CAUSE.  AND THAT'S SO EVEN IF THE EVIDENCE PRESENTED TO YOU IS

18   COMPOSED OF HEARSAY, THAT MIGHT OR MIGHT NOT BE ADMISSIBLE

19   WHEN THE CASE FINALLY GOES TO TRIAL.

20            FREQUENTLY CHARGES ARE MADE AGAINST MORE THAN ONE

21   PERSON.  IT'S YOUR DUTY IN INSTANCES WHERE YOU'RE PRESENTED

22   WITH AN INDICTMENT THAT IT PROPOSES CHARGING SEVERAL PEOPLE TO

23   EXAMINE THE EVIDENCE AS IT RELATES TO EACH PERSON WHO IS

24   PROPOSED TO BE CHARGED AND TO MAKE YOUR FINDINGS INDIVIDUALLY

25   AS TO EACH PERSON.

16

1    STATED DIFFERENTLY, YOU'RE TO LOOK AT THE CASE
2  AGAINST EACH PERSON THAT THE GOVERNMENT PROPOSES BE CHARGED
3  AND DETERMINE WHETHER THERE'S PROBABLE CAUSE THAT EACH PERSON
4  WAS INVOLVED IN THE COMMISSION OF A FEDERAL CRIME.
5    YOU ARE, OF COURSE, FREE TO INDICT EVERYONE WHO IS
6  PROPOSED BY THE GOVERNMENT TO BE INDICTED OR ONLY THOSE PEOPLE
7  THAT YOU BELIEVE PROPERLY DESERVE TO BE INDICTED.
8    ONCE YOU'VE HEARD THE EVIDENCE IN SUPPORT OF AN
9  INDICTMENT, YOU'LL THEN PROCEED TO DELIBERATE WHETHER THE
10  MATTER SHOULD BE INDICTED.  WHEN YOU DO SO, NO ONE OTHER THAN
11  YOU, YOUR OWN MEMBERS, OR AN INTERPRETER NECESSARY TO ASSIST A
12  JUROR WHO IS HEARING- OR SPEECH-IMPAIRED -- AND I DON'T THINK
13  WE HAVE ANY HERE IN THIS PANEL -- IS TO BE PRESENT WHILE
14  YOU'RE DELIBERATING.  IN OTHER WORDS, ONLY THE GRAND JURORS,
15  NOT THE COURT REPORTER OR THE GOVERNMENT LAWYER OR ANYONE
16  ELSE, IS PRESENT DURING THE DELIBERATION IN VOTING ON WHETHER
17  AN INDICTMENT SHOULD BE RETURNED.
18    TO RETURN AN INDICTMENT CHARGING SOMEONE WITH AN
19  OFFENSE, IT'S NOT NECESSARY THAT YOU FIND THE PERSON GUILTY
20  BEYOND A REASONABLE DOUBT.  THAT'S A TRIAL LEVEL STANDARD.
21  THAT'S NOT THE STANDARD THAT APPLIES TO A GRAND JURY.  YOU'RE
22  NOT A TRIAL JURY, AND YOUR TASK IS NOT TO DECIDE ULTIMATELY
23  WHETHER THE PERSON IS GUILTY OR NOT GUILTY.  INSTEAD, AS I'VE
24  MENTIONED AND ALLUDED TO SEVERAL TIMES, YOUR TASK IS TO
25  DETERMINE WHETHER THE GOVERNMENT'S EVIDENCE AS PRESENTED TO

1    YOU IS SUFFICIENT TO CAUSE YOU TO CONCLUDE THAT THERE'S

2    PROBABLE CAUSE TO BELIEVE THAT THE PERSON BEING INVESTIGATED

3    COMMITTED THE OFFENSE CHARGED.

4         THAT'S A TWO-PART ASSESSMENT:  NUMBER ONE, YOU'LL

5    HAVE A REASONABLE BELIEF THAT A FEDERAL CRIME WAS COMMITTED;

6    AND NUMBER TWO, YOU'LL HAVE A REASONABLE BELIEF THAT THIS

7    PERSON THAT THEY'RE ASKING YOU TO CHARGE PARTICIPATED IN THE

8    CRIME IN SOME FASHION, EITHER COMMITTED IT OR ATTEMPTED IT OR

9    HELPED SOMEBODY COMMIT IT OR CONSPIRED WITH PEOPLE TO COMMIT

10   IT.

11        EACH GRAND JUROR HAS THE RIGHT TO EXPRESS HIS OR HER

12   OWN VIEW OF THE MATTER UNDER CONSIDERATION.  THAT OCCURS

13   OBVIOUSLY DURING THE PROCESS OF DELIBERATION.  ONLY AFTER ALL

14   OF THE GRAND JURORS HAVE BEEN GIVEN AN OPPORTUNITY TO BE HEARD

15   SHOULD YOU TAKE A VOTE ON WHETHER TO RETURN AN INDICTMENT.

16        YOU MAY DECIDE AFTER DELIBERATION AMONG YOURSELVES

17   THAT THE TIME IS NOT RIGHT FOR AN INDICTMENT AND YOU NEED

18   FURTHER EVIDENCE BEFORE A VOTE IS TAKEN.  IN THAT CASE, YOU

19   CAN ASK THE GOVERNMENT LAWYER TO CALL ADDITIONAL WITNESSES OR

20   PRESENT ADDITIONAL EVIDENCE OR YOU MAY DIRECT A SUBPOENA FOR

21   ADDITIONAL DOCUMENTS OR WITNESSES THAT YOU WANT TO CONSIDER

22   BEFORE YOU TAKE A FINAL VOTE.

23        WHEN YOU HAVE DECIDED TO VOTE, THE FOREPERSON OF THE

24   GRAND JURY SHALL DESIGNATE A JUROR AS THE SECRETARY, WHO WILL

25   KEEP RECORD OF THE VOTE.  THAT RECORD IS TO BE FILED WITH THE

18

1    CLERK OF THE COURT AFTER EACH SESSION IN WHICH VOTES ARE

2    TAKEN.   THE RECORD DOES NOT INCLUDE THE NAMES OF THE JURORS,

3    BUT ONLY THE NUMBER OF THOSE VOTING FOR INDICTMENT.   YOU WILL

4    NOT BE PERSONALLY IDENTIFIED BY THE VOTE THAT YOU GIVE, BUT

5    THE NUMBERS WILL BE IDENTIFIED.

6          REMEMBER THAT AT LEAST 16 JURORS MUST BE PRESENT AT

7    ALL TIMES.   AND IN ORDER TO RETURN AN INDICTMENT, AT LEAST 12

8    MEMBERS MUST VOTE IN FAVOR OF AN INDICTMENT BEFORE ONE MAY BE

9    RETURNED.   SO IT TAKES 12 VOTES TO RETURN AN INDICTMENT.   IF

10   12 OR MORE MEMBERS OF THE GRAND JURY AFTER DELIBERATING

11   BELIEVE THAT AN INDICTMENT IS WARRANTED, THEN YOU'LL REQUEST

12   THE GOVERNMENT LAWYER PREPARE THE FORMAL WRITTEN INDICTMENT.

13   THAT'S THE CHARGING PAPER ITSELF THAT LISTS THE CHARGES AND

14   HAS THE CAPTION UNITED STATES AGAINST THE PERSON WHO IS

15   PROPOSED TO BE INDICTED.

16          TYPICALLY, THE PROPOSED INDICTMENTS ARE PRESENTED IN

17   ADVANCE.   THE GOVERNMENT WILL ALREADY HAVE THE PAPERWORK DONE

18   SO YOU CAN LOOK AT IT.   THE INDICTMENT SHOULD SET FORTH THE

19   DATE AND PLACE OF THE OFFENSE, AND IT WILL ASSERT

20   CIRCUMSTANCES MAKING THE ALLEGED CONDUCT CRIMINAL.   AND

21   IMPORTANTLY, IT WILL ALSO IDENTIFY THE CRIMINAL STATUTE THAT

22   HAS BEEN VIOLATED.

23          ONCE THE VOTE IS TAKEN AND ASSUMING IT IS TO INDICT,

24   THEN IT'S THE RESPONSIBILITY OF THE FOREPERSON OF THE GRAND

25   JURY TO SIGN THE INDICTMENT AS A TRUE BILL IN A SPACE FOLLOWED

18

19

1  BY THE WORD "FOREPERSON."  IT'S THE DUTY OF THE FOREPERSON TO

2  SIGN EVERY INDICTMENT WHETHER OR NOT THE FOREPERSON VOTED FOR

3  IT OR AGAINST IT.

4        IF FEWER THAN 12 MEMBERS OF THE GRAND JURY VOTE IN

5  FAVOR OF AN INDICTMENT WHICH HAS BEEN SUBMITTED TO YOU FOR

6  YOUR CONSIDERATION, THEN THAT DOCUMENT IS TO BE ENDORSED AS

7  NOT A TRUE BILL; THAT IS, IF YOU CAN'T MUSTER 12 VOTES, THEN

8  THE "NOT A TRUE BILL" IS WRITTEN ON THE DOCUMENT.  AND IT'S

9  RETURNED TO THE COURT, AND THE COURT IMPOUNDS IT.

10       ONCE INDICTMENTS HAVE BEEN RETURNED AND SIGNED, THEY

11  ARE PRESENTED TO A JUDGE OR A MAGISTRATE JUDGE IN OPEN COURT

12  BY THE FOREPERSON.  IT USED TO BE THAT THE ENTIRE GRAND JURY

13  HAD TO RETURN THE INDICTMENTS.  BACK WHEN I WAS DOING THIS 18,

14  23 PEOPLE WOULD MARCH OVER TO THE FEDERAL JUDGE'S CHAMBERS AND

15  RETURN THE INDICTMENT.

16       A FEW YEARS AGO, CONGRESS AMENDED THE RULE SO THAT

17  THE GRAND JURY COULD BE REPRESENTED BY JUST THE FOREPERSON OR

18  THE DEPUTY FOREPERSON.  SO THAT MAKES IT A LITTLE BIT MORE

19  CONVENIENT.  IN THE ABSENCE OF THE FOREPERSON, THE DEPUTY

20  FOREPERSON ACTS IN HIS OR HER PLACE AND PERFORMS ALL THE

21  FUNCTIONS OF THE FOREPERSON.

22       NOW, LET ME TALK TO YOU A LITTLE BIT ABOUT THE

23  INDEPENDENCE OF THE GRAND JURY.  AND WE'RE NEARLY THROUGH WITH

24  THESE INSTRUCTIONS.

25       IT'S VERY IMPORTANT FOR YOU TO REALIZE THAT UNDER

19

20

1   THE U.S. CONSTITUTION, THE GRAND JURY IS AN INDEPENDENT ARM.

2   IT'S INDEPENDENT OF THE UNITED STATES ATTORNEY, AND IT'S NOT

3   AN ARM OF ANY OF THE AGENCIES WHOSE REPRESENTATIVES MIGHT

4   APPEAR BEFORE YOU.  YOU'RE NOT PART OF THE FBI OR THE DEA OR

5   THE INTERNAL REVENUE SERVICE OR ANY OF THOSE OTHERS.  SIMPLY

6   PUT, AS I TOLD YOU, THE GRAND JURY IS AN INDEPENDENT BODY.  IT

7   DOESN'T BELONG TO ANY BRANCH OF GOVERNMENT.

8           HOWEVER, AS A PRACTICAL MATTER, YOU'RE GOING TO WORK

9   CLOSELY WITH GOVERNMENT LAWYERS.  THE ASSISTANT UNITED STATES

10  ATTORNEYS HERE ARE THE ONES THAT ARE TASKED TYPICALLY WITH

11  BRINGING MATTERS FOR YOU TO CONSIDER.  AND SO THEY WILL MOST

12  FREQUENTLY BE THE GOVERNMENT OFFICIALS IN FRONT OF YOU.

13          THEY'LL PROVIDE YOU WITH IMPORTANT SERVICE.  THEY'LL

14  HELP YOU FIND YOUR WAY WHEN YOU'RE CONFRONTED WITH COMPLEX

15  LEGAL MATTERS.  ALL OF THE STAFF OF THE U.S. ATTORNEY'S OFFICE

16  ARE LAWYERS, AND MOST ARE EXPERIENCED LAWYERS.

17          IT'S ENTIRELY PROPER FOR YOU TO SEEK AND RECEIVE

18  ASSISTANCE FROM THE ASSISTANT UNITED STATES ATTORNEYS.  IF

19  PAST EXPERIENCE IS ANY INDICATION OF WHAT TO EXPECT IN THE

20  FUTURE, THEN YOU CAN EXPECT CANDOR AND HONESTY AND GOOD FAITH

21  IN MATTERS PRESENTED TO YOU BY THE GOVERNMENT ATTORNEYS.

22          HOWEVER, KEEP IN MIND ULTIMATELY YOU HAVE TO DEPEND

23  ON YOUR OWN INDEPENDENT JUDGMENT.  YOU NEVER BECOME AN ARM OF

24  THE U.S. ATTORNEY'S OFFICE.  THE GOVERNMENT ATTORNEYS ARE

25  PROSECUTORS.  YOU'RE NOT.  YOU'RE JUDGES; JUDGES OF FACT.  IF

20

21

1    THE FACTS SUGGEST TO YOU THAT YOU SHOULD NOT INDICT, THEN YOU

2    SHOULD NOT DO SO EVEN IN THE FACE OF OPPOSITION OR STATEMENTS

3    OF OPPOSITION MADE BY THE GOVERNMENT LAWYERS.

4         IT'S YOUR PREROGATIVE.  IT'S UP TO YOU, AND NO ONE

5    SHOULD BE FORCED TO DO THIS IF THEY DON'T THINK

6    CONSCIENTIOUSLY THAT RETURN OF AN INDICTMENT IS APPROPRIATE.

7    OBVIOUSLY, IT VIOLATES THE OATH THAT YOU'VE TAKEN TO

8    CONSCIENTIOUSLY EVALUATE THESE MATTERS IF YOU MERELY

9    RUBBER-STAMP THE INDICTMENT BEING BROUGHT TO YOU BY THE

10   GOVERNMENT REPRESENTATIVES.

11        JUST AS YOU HAVE TO MAINTAIN INDEPENDENCE IN YOUR

12   DEALINGS WITH GOVERNMENT LAWYERS, YOU SHOULD ALSO DO SO IN

13   YOUR DEALINGS WITH THE COURT.  DEALINGS WITH THE COURT SHOULD

14   BE ON A FORMAL BASIS.  IF YOU HAVE A QUESTION FOR THE COURT OR

15   YOU WANT TO MAKE PRESENTMENT OR RETURN OF AN INDICTMENT TO THE

16   COURT, THEN TYPICALLY YOU'LL ASSEMBLE IN THE COURTROOM FOR

17   THESE PURPOSES.

18        IN SOME INSTANCES, THE JUDGES WILL COME OVER TO THE

19   GRAND JURY ROOM.  FRANKLY, I LIKE THE EXERCISE.  SO IF I EVER

20   GET THE CALL, I COME OVER TO YOU.  AND THERE WAS ALWAYS

21   SOMETHING UNSEEMLY TO ME -- I HATE TO SAY THIS NOW -- ABOUT 18

22   OR 23 PEOPLE COMING TO ONE RATHER THAN ONE COMING TO THE 23.

23   SOME OF OUR JUDGES ARE VERY BUSY, AND THEY HAVE TO DO IT

24   DURING RECESSES.  SO I UNDERSTAND THAT.  I GUESS I'M NOT

25   CRITICIZING ANY OF THESE OTHER PEOPLE ON THE WALL.  FOR MY

COMPUTER-AIDED TRANSCRIPTION

22

1   PURPOSES, I LIKE TO WALK OVER WHEN CALLED UPON.  MOST OFTEN,

2   THOUGH, IT WILL BE THE FOREPERSON OR THE DEPUTY FOREPERSON WHO

3   WILL RETURN THE MATTER TO THE JUDGES.

4            EACH GRAND JUROR IS DIRECTED TO REPORT IMMEDIATELY

5   TO THE COURT ANY ATTEMPT BY ANYBODY WHO UNDER ANY PRETENSE

6   WHATSOEVER ADDRESSES OR CONTACTS YOU FOR THE PURPOSE OF TRYING

7   TO GAIN INFORMATION OF ANY KIND CONCERNING THE PROCEEDINGS

8   BEFORE THE GRAND JURY OR TO INFLUENCE YOU IN ANY MANNER.  IF

9   THAT HAPPENS, LET ME KNOW ABOUT IT RIGHT AWAY.  I'M THE

10  LIAISON TO THE JURIES AND THE GRAND JURIES.  THAT SHOULD NOT

11  HAPPEN UNDER ANY CIRCUMSTANCE.  PLEASE CALL MY CHAMBERS AND

12  TELL ME GENERALLY THAT YOU'VE BEEN CONTACTED AND YOU NEED TO

13  SEE ME.  I'LL MAKE TIME IMMEDIATELY TO DO THAT, OR ANY OTHER

14  JUDGE OF OUR COURT.

15           NOW, ANOTHER REMINDER ABOUT THE OBLIGATION OF

16  SECRECY.

17           YOUR PROCEEDINGS, THE GRAND JURY PROCEEDINGS, ARE

18  SECRET.  THEY HAVE TO REMAIN SECRET PERMANENTLY UNLESS AND

19  UNTIL THE COURT TELLS YOU OTHERWISE.  YOU CAN'T RELATE TO

20  ANYONE, INCLUDING MEMBERS OF YOUR FAMILY, TO THE NEWS OR

21  TELEVISION REPORTERS OR ANYONE ELSE, WHAT TRANSPIRED IN THE

22  GRAND JURY ROOM.

23           AS I MENTIONED TO YOU, THERE ARE SEVERAL IMPORTANT

24  REASONS FOR THIS REQUIREMENT.  IF THINGS ARE DISCLOSED

25  PREMATURELY THAT ARE CURRENTLY BEFORE THE GRAND JURY, THAT MAY

1   FRUSTRATE THE ENDS OF JUSTICE BY GIVING SOMEONE UNDER

2   INVESTIGATION THE OPPORTUNITY TO ESCAPE OR BECOME A FUGITIVE.

3   SOMETIMES IT LEADS TO PEOPLE DESTROYING EVIDENCE IF THEY KNOW

4   THAT THEIR CONDUCT IS BEING SCRUTINIZED AND THOUGHT TO BE

5   CRIMINAL.

6        ALSO, IF THE TESTIMONY OF A WITNESS IS DISCLOSED,

7   THE WITNESS MAY BE SUBJECT TO INTIMIDATION OR RETALIATION.

8   THERE HAVE BEEN INSTANCES WHERE PEOPLE HAVE BEEN INJURED,

9   BEATEN UP, THAT TYPE OF THING.  OR EVEN, AT A MINIMUM,

10  TAMPERING WITH SOMEONE BEFORE THEY HAVE THE OPPORTUNITY TO

11  GIVE TESTIMONY EITHER BEFORE YOU OR A TRIAL JURY.  SO IT'S

12  VERY, VERY IMPORTANT THAT -- AS THEY SAY ABOUT LAS VEGAS, WHAT

13  HAPPENS IN THE GRAND JURY STAYS IN THE GRAND JURY.

14       THE REQUIREMENT OF SECRECY, AS I MENTIONED, TOO --

15  AND THIS IS VERY IMPORTANT -- IT PROTECTS INNOCENT PEOPLE WHO

16  MAY HAVE COME UNDER INVESTIGATION, BUT WHO HAVE BEEN CLEARED

17  BY YOU, WHOSE ACTIONS ARE NOT DEEMED TO BE CRIMINAL.  IN THE

18  EYES OF SOME, AS I SAID, AN INVESTIGATION BY THE GRAND JURY OF

19  ITSELF CARRIES WITH IT A SUGGESTION OF GUILT.  IT'S THE POWER

20  TO RUIN SOMEBODY, RUIN SOMEBODY'S REPUTATION.

21       I THINK ALL OF US HAVE EXPERIENCED AT SOME TIME

22  READING IN THE PAPER THE SPECTER THAT SOMEBODY IS UNDER

23  INVESTIGATION.  THAT SHOULD NOT EMANATE FROM ANY MEMBER OF THE

24  GRAND JURY.  GREAT INJURY CAN BE DONE TO PEOPLE'S GOOD NAME

25  EVEN THOUGH THEY'RE ULTIMATELY NOT INDICTED.

24

1     FINALLY, THE SECRECY REQUIREMENT HELPS PROTECT YOU.

2   IT HELPS PROTECT YOU AS MEMBERS OF THE GRAND JURY FROM

3   IMPROPER CONTACT BY THOSE WHO ARE UNDER INVESTIGATION.  WE

4   MAKE EVERY EFFORT TO ENSURE YOUR PRIVACY.  YOUR NAMES ARE NOT

5   DISCLOSED.

6     SO FOR ALL OF THESE REASONS, THE SECRECY REQUIREMENT

7   IS OF UTMOST IMPORTANCE, AND IT HAS TO BE REGARDED BY YOU AS

8   AN ABSOLUTE DUTY.  I TELL YOU THIS JUST TO UNDERSCORE THIS.

9   IF YOU DO VIOLATE YOUR OATH OF SECRECY, YOU'RE SUBJECT TO

10   CRIMINAL PROSECUTION AND POSSIBLE PUNISHMENT.  I KNOW NONE OF

11   YOU WOULD BE INCLINED TO DO THAT.  I MENTION THAT IN PASSING,

12   IN ANY EVENT.

13     TO ENSURE THE SECRECY OF GRAND JURY PROCEEDINGS, THE

14   LAW PROVIDES THAT ONLY AUTHORIZED PEOPLE MAY BE IN THE GRAND

15   JURY ROOM WHEN EVIDENCE IS BEING PRESENTED.  AND ONLY MEMBERS

16   OF THE GRAND JURY, THE GOVERNMENT ATTORNEY, THE WITNESS UNDER

17   EXAMINATION, THE COURT REPORTER, AND AN INTERPRETER, IF

18   REQUIRED, MAY BE PRESENT.  WHEN YOU'RE TAKING TESTIMONY, THOSE

19   WILL BE THE ONLY FOLKS WHO ARE IN THE CHAMBER WITH YOU:  YOU,

20   YOUR FELLOW GRAND JURORS, THE COURT REPORTER, THE GOVERNMENT

21   LAWYER WHO'S ASKING QUESTIONS; AND TYPICALLY JUST THE WITNESS.

22   IF THE WITNESS NEEDS AN INTERPRETER, THEN THAT PERSON WILL BE

23   THERE, TOO.

24     A REMINDER:  IF YOU ULTIMATELY DECIDE TO VOTE FOR AN

25   INDICTMENT, THE PRESENCE OF ANY UNAUTHORIZED PERSON IN THE

24

25

1    GRAND JURY ROOM COULD INVALIDATE THAT INDICTMENT.  REMEMBER

2    PARTICULARLY THAT AT THE TIME YOU TAKE THE VOTE, NO ONE BUT

3    GRAND JURORS, OR IN THE CASE OF A HEARING-IMPAIRED MEMBER OF

4    THE GRAND JURY AN INTERPRETER TO THAT PERSON, OR

5    SPEECH-IMPAIRED MEMBER OF THE GRAND JURY AN INTERPRETER OR

6    ASSISTANT TO HELP THAT PERSON MAY BE PRESENT IN THE GRAND JURY

7    ROOM DURING THE VOTING.  WHAT THAT MEANS IS EVEN THE COURT

8    REPORTER AND THE GOVERNMENT LAWYER AREN'T ALLOWED AT SUCH

9    POINT AS YOU DECIDE TO VOTE.

10         NOW, ONE MINOR EXCEPTION.  YOU MAY DISCLOSE MATTERS

11   WHICH OCCUR BEFORE THE GRAND JURY TO ATTORNEYS FOR THE

12   GOVERNMENT FOR USE BY THOSE ATTORNEYS IN THE PERFORMANCE OF

13   THEIR DUTIES.  EVEN WITH RESPECT TO THE GOVERNMENT LAWYERS,

14   YOU MAY NOT DISCLOSE THE CONTENTS OF YOUR DELIBERATION AND THE

15   VOTE OF ANY JUROR.  SO THE GOVERNMENT LAWYERS ARE NEVER TO

16   KNOW WHICH OF YOU VOTED WHICH WAY, WHICH OF YOU VOTED THE

17   OTHER WAY, OR WHAT WAS THE SUBJECT MATTER OF THE

18   DELIBERATIONS.  THOSE ARE MATTERS THAT ARE EXCLUSIVELY WITHIN

19   YOUR PROVINCE.

20         LET ME CONCLUDE BY SAYING THAT THIS IS A VERY

21   IMPORTANT SERVICE THAT YOU HAVE UNDERTAKEN.  IT'S DEMONSTRATED

22   BY THE VERY COMPREHENSIVE INSTRUCTIONS I'VE GIVEN.  IT'S

23   DEMONSTRATED ALSO BY THE IMPORTANT OATH THAT YOU TOOK JUST A

24   SHORT WHILE AGO.  THE OATH OF THE GRAND JURY IS ROOTED IN

25   HISTORY, AND THOUSANDS OF YOUR FOREBEARERS HAVE TAKEN A

COMPUTER-AIDED TRANSCRIPTION

26

1    SIMILAR OATH.  AS GOOD CITIZENS, YOU SHOULD BE PROUD TO HAVE

2    BEEN SELECTED TO ASSIST WITH THE ADMINISTRATION OF THE

3    AMERICAN SYSTEM OF JUSTICE.

4              THAT AND THIS, TOO:  IT'S BEEN MY GREAT PLEASURE TO

5    HAVE MET ALL OF YOU.  I LOOK FORWARD TO SEEING YOU AROUND THE

6    GROUNDS, AS THEY SAY.  AT THIS POINT, IT CONCLUDES THE COURT'S

7    FUNCTION.

8              DOES IT NOT?

9              THE CLERK:  YES.

10             THE COURT:  SO I'M DONE.  I'M GOING TO TURN YOU OVER

11   TO THE GOVERNMENT LAWYER, MR. WHEAT, WHO WILL ASSIST YOU IN

12   GETTING ORGANIZED AND GIVE YOU SOME MORE INFORMATION.

13             AGAIN, NICE MEETING ALL OF YOU.  HAVE A WONDERFUL

14   WEEKEND.

15                         --oOo--

16             I HEREBY CERTIFY THAT THE TESTIMONY

17             ADDUCED IN THE FOREGOING MATTER IS

18             A TRUE RECORD OF SAID PROCEEDINGS.

19

20       S/EVA OEMICK                      10-15-07

21       EVA OEMICK                        DATE
         OFFICIAL COURT REPORTER
22

23

24

25

COMPUTER-AIDED TRANSCRIPTION                    26

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>MANLEY SMITH (2),<br><br>Defendant. | )<br>)<br>)  Case No. 08CR1969-JM<br>)<br>)<br>)  CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>) |

Counsel for Defendant certifies that the foregoing pleading, is true and accurate to the best of his information and belief, and that a copy of the foregoing Defendant's Notice of Motions and Motions has been electronically served this day upon:

W. Mark Conover
Assistant U.S. Attorney
880 Front Street
San Diego, CA  92101

Dated:  July 15, 2008                                        ___/s/  Jason  I.  Ser____
                                                                         JASON I. SER
                                                                         Federal Defenders
                                                                         225 Broadway, Suite 900
                                                                         San Diego, CA 92101-5030
                                                                         (619) 234-8467  (tel)
                                                                         (619) 687-2666  (fax)
                                                                         jason_ser@fd.org